Rene L Valladares
Federal Public Defender
Nevada State Bar No. 11479
Raquel Lazo
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
Raquel_Lazo@fd.org

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:24-cr-00145-RFB-MDC |
| Plaintiff, | |
| v. | **Sentencing Memorandum**[1] |
| Jesus Manuel Lopez-Villanueva, | |
| Defendant. | |

Last summer, Jesus Lopez-Villanueva appeared before this Court and pleaded guilty to engaging in the business of dealing firearms without a license and selling firearms, some of which were equipped with machine gun conversion devices, to both an ATF undercover agent and a confidential source. The charges stem from offense conduct that occurred in December 2023 through January 2024. Since that time, Jesus has been 100% compliant and has abided by all his pretrial release conditions.

Jesus now appears before this Court for sentencing. The PSR recommends a sentence of 39 months. This is a 7-month variance from Jesus's low end guideline range. In support of its recommendation for a variance, probation

---

[1] Certification: This Sentencing Memorandum is timely filed.

acknowledges that Jesus is 21 years old, has no convictions, has previously never been arrested, has maintained steady employment since the age of 14, currently maintains two full-time jobs and, apart from the instant offense, has been a law-abiding and productive member of society. Probation further notes that its recommendation is in line with JSIN data which reflects that the average length of imprisonment imposed for those similarly situated to Jesus was 39 months. Pursuant to the plea agreement, the government agrees to seek no more than 37 months which works out to a low-end recommendation with a 2-level variance. Jesus is permitted to argue for probation based on 18 U.S.C. § 3553 factors.

Jesus is a total stranger to the criminal justice system. Prior to his arrest here, he had never been in trouble with the law before. However, he will now be branded a convicted felon for the rest of his life. This significant punishment, along with whatever probationary or supervised release conditions this Court sees fit, will sufficiently punish and deter him from future criminal conduct. The goals of sentencing are advanced a noncustodial sentence particularly where the criminal offense was aberrant. While his conduct was serious and should not be minimized, there is nothing to indicate that Jesus will continue to engage in criminal conduct. He has been out of custody for over one year and has been a model pretrial releasee. Accordingly, he asks this Court to vary down to probation for all the reasons stated below.

- ***Jesus's law-abiding life prior to the instant offense, his strong family support, and his future goals***

Jesus was born to a father he has never known and to a mother who was not able to care for him or his siblings.[2] As a result, he was adopted by his

---

[2] PSR at ¶ 58.

2

maternal grandparents as a young boy.[3] Although he was born in California, he relocated to Sinaloa, Mexico when he was six-years old.[4] He lived a very simple ranch life with his adoptive parents who treated him "very well."[5] The adjustment didn't come without challenge. He cried a lot and suffered from emotional issues because he no longer had his biological mother in his life and was not well acquainted with his adoptive parents.[6] To his parent's credits, they got him regular counseling as a young child.[7] This helped. The ability to participate in several sporting activities through his youth was also extremely beneficial. He participated in sports such as track and field, swimming, and soccer.[8]

In 2019, Jesus settled in Las Vegas with his adoptive parents.[9] Adjusting to life in the United States, particularly schooling, was not easy. He attended high school but eventually dropped out his senior year because "his English was bad" and he "came from a ranch and was not familiar with computers."[10] It made sense to him to work and earn a living rather than continue his education.[11]

Jesus did just that. Since dropping out of school, he has always worked. Initially, he worked menial jobs for a couple of years.[12] Then, he was a metal/cable worker for about a year and then resigned in 2023 to work as a

---

[3] Id.
[4] Id.
[5] Id. at ¶ 60.
[6] Id. at ¶ 61, 74.
[7] Id.
[8] Id. at ¶ 60.
[9] Id. at ¶ 62.
[10] Id. at ¶ 81.
[11] Id.
[12] Id. at ¶ 88-90.

carpenter.[13] In July 2024, he resigned from his carpentry job due to lack of jobs/work.[14] It was the loss of work that led him to the instant criminal conduct as a means of making easy money.

However, since his arrest here, he has been working not one but two jobs. He has worked at Superior Grocers as a full-time stocker since March 2024.[15] He has also been working at Sunrise Carpentry since July 2024.[16] His work leaves him with hardly any free time. When he has it, he spends his free time with his family.[17]

Jesus is extremely close to his adoptive parents and two younger siblings who are 16 and 12 years old.[18] Jesus visits his parents and siblings on a near daily basis and routinely assists them by running errands, completing household chores, and providing help with transportation for his siblings.[19] He also assists his parents financially.[20] This is critical particularly given his father's treatment for his recent cancer diagnosis.[21] His parents are aware of the instant offense and remain committed to supporting him in any way.[22]

Jesus also has the close support from his girlfriend.[23] The two have been in a committed relationship for the past year. The two moved together into an

---

[13] *Id.* at ¶ 87.
[14] *Id.* at ¶ 86.
[15] *Id.* at ¶ 85.
[16] *Id.*
[17] *Id.* at ¶ 69.
[18] *Id.* at ¶ 59.
[19] *Id.* at ¶ 63.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at ¶ 65.

apartment shortly after Jesus's guilty plea in this case.[24] Eventually, they would like to start their own family but, for now, Jesus is focused on focusing on his immediate family. He also would like to eventually start his own business, as such he is considering attending electrical or trucking school in the near future.[25] Time has been tight, but he would also like to reenroll in English Language Learner and High School Diploma classes at CCSD.[26]

- ***A Variance Promotes Punishment and Will Not Result in a Disparate Outcome***

The PSR includes information obtained from the United States Sentencing Commission's JSIN database.[27] The information shows that defendants similarly situated to Jesus – those whose primary guideline was U.S.S.G. § 2K2.1 with a final offense level of 23 and a criminal history category of I – received an average length of imprisonment of 39 months and a median length of imprisonment of 41 months.[28] As noted by probation, JSIN supports Jesus's request that a variance is warranted.

The United States Sentencing Commission also has the IDA database. Both JSIN and IDA provide sentencing data, however JSIN only provides national outcomes. It does not provide any circuit or district outcomes. JSIN does not permit the user to filter important demographic information that should be considered when analyzing defendants who are similarly situated (in race, gender, age, citizenship, and education). One important consideration with IDA is

---

[24] *Id.* at ¶ 67.
[25] *Id.* at ¶ 71.
[26] *Id.* at ¶ 82.
[27] PSR at p. 21-22.
[28] *Id.*

that it does not filter offense level. As such, to the extent that this Court considers JSIN, I think it is important to consider both JSIN and IDA together.

Using IDA, the following two tables capture the average and median sentence lengths (in months) for three separate scenarios: all circuit outcomes, Ninth Circuit outcomes only, and District of Nevada outcomes only. The table also further captures the different outcomes filtering demographic information.[29]

**Average Sentence Length**

|  | With Demographics | Without Demographics |
|---|---|---|
| *All Circuits* | 23 | 20 |
| *9th Circuit only* | 14 | 13 |
| *District of Nevada only* | 12 | 13 |

**Median Sentence Length**

|  | With Demographics | Without Demographics |
|---|---|---|
| *All Circuits* | 18 | 12 |
| *9th Circuit only* | 10 | 8 |
| *District of Nevada only* | 12 | 11 |

In all scenarios, the average and median sentence lengths are substantially less than what Jesus is facing here. Notably, in our circuit and our district, defendants who are truly similarly situated to Jesus have received an

---

[29] *See* IDA scenario screenshots (Exhibit A). The data includes fiscal years 2020-2024, primary guideline § 2K2.1, and criminal history category I. The demographic information filtered includes race (Hispanic), gender (male), age (21-25) and citizenship (U.S. citizen). Sentences of probation were included in all scenarios.

6

average sentence of approximately one year. Together, JSIN and IDA illustrate that a variance is justified and would avoid disparity.

- ***Conclusion***

In seeking even less custodial time, Jesus in no way intends to diminish probation and the government's graciousness in recommending a variance. However, Jesus believes that a noncustodial term more fully accounts for the mitigating aspects of his case. The fact that he will now have a felony and be subject to conditions will account for the seriousness of his offense and sufficiently deter future illegal conduct.  A term of custody will do more harm than good and interrupt the positive course he has been on for over a year now.

DATED this 29th day of April 2025.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

By:  */s/ Raquel Lazo*

RAQUEL LAZO
Assistant Federal Public Defender
Attorney for Jesus Lopez-Villanueva