SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar No. 8264
LAUREN M. IBANEZ
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: lauren.ibanez@usdoj.gov
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JESUS MANUEL LOPEZ-VILLANUEVA, <br><br> Defendant. | Case No. 2:24-cr-00145-RFB-MDC <br><br> **Government's Response to Defendant's Sentencing Memorandum [ECF No. 29]** |

The United States of America, through the undersigned, submits the following

Sentencing Memorandum for the Court's review prior to sentencing. Sentencing is currently

set for May 8, 2025.

## I.    Factual Background

On February 15, 2024, a federal criminal complaint was filed, charging Defendant

Jesus Manuel Lopez-Villanueva with one count of Engaging in the Business of Dealing or

Manufacturing Firearms without a License; one count of Trafficking in Firearms; and three

counts of Unlawful Transfer or Possession of a Machine Gun. *See* ECF No. 1.

On July 9, 2024, Defendant pleaded guilty via a plea agreement to a Criminal

Information to one count of Engaging in the Business of Dealing or Manufacturing Firearms

1

without a License in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D), and three counts of Unlawful Transfer or Possession of a Machine Gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* ECF Nos. 18 and 19.

## II.    Guideline Calculations

The Presentence Investigation Report ("PSR") properly correctly calculates a base level offense of 18 pursuant to U.S.S.G. § 2K2.1(a)(5). *See* PSR ¶ 37. A four-level enhancement was added because the offense conduct involved eleven firearms pursuant to U.S.S.G. §2K2.1(b)(1)(B). *See* PSR ¶ 38. An additional four-level enhancement was applied because the privately manufactured firearms involved in the offense conduct did not have a serial number pursuant to U.S.S.G. §2K2.1(b)(4)(B). *See* PSR ¶ 39. The PSR also provides a three-level deduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). *See* PSR ¶¶ 45-46. The PSR then calculated the total offense level to be 23, coupled with a criminal history category of I, which results in an advisory guideline range of 46 to 57 months. *See* PSR ¶ 97.

The Probation Officer recommends a downward variant to 39 months per count to run concurrently. *See* PSR, p. 21. In accordance with the plea agreement, the government recommends 37 months.

## III.    Argument

### A.  Term of Imprisonment

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). In fashioning a sentence, the Court considers the "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for

the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. *See* 18 U.S.C. § 3553(a).

In comporting with the plea agreement, the government is recommending a two-level downward variance and a custodial sentence at the low-end of the guideline range which is 37 months. Dealing firearms is, in of itself, serious conduct with far-reaching consequences. It takes little foresight to predict the disastrous and harmful effects that can result from inserting illegal firearms into the community. Even the PSR notes "guns sold by unlicensed dealers often turn up in the hands of convicted felons, at crime scenes, and in police investigations, including cases of armed robbery and murder." *See* PSR ¶ 129. The fact that Lopez-Villanueva repeatedly sold firearms demonstrates at best, egregious ignorance, and at worst an intentional perpetuation of the violence often associated with firearms.

The firearms involved in this matter also bear specific characteristics that aggravate the conduct. Villanueva ultimately sold eleven firearms—five of which were privately made firearms and three of which had a machine gun conversion device affixed. The Court is all too familiar with both characteristics as these types of firearms have become a rampant problem throughout the Las Vegas community. A problem that has unfortunately continued to escalate and one that is perpetuated by individuals such as Lopez-Villanueva who lack discouragement from doing so. Privately made firearms prevent law enforcement from tracing the firearm's origin. This is extremely problematic when these types of firearms are often recovered during criminal investigations. "A fact that criminals know and take advantage of." *See* PSR ¶ 122. Additionally, machine gun conversation devices make inherently dangerous firearms significantly more dangerous by converting semi-automatic firearms into fully functioning machineguns. Such firearms are not designed to function as machineguns, thus making it

3

incredibly difficult to control and aim. Machine gun conversion devices add an even more deadly layer to firearm violence and endanger the safety of all members in the community.

The government acknowledges Lopez-Villanueva's lack of criminal history and his age as relevant factors for the Court's consideration pursuant to § 3553(a). But youth and a lack of criminal history cannot shield Lopez-Villanueva from the consequences of his actions. It is concerning that an individual like Lopez-Villanueva with "adoptive parents who treated him 'very well,'" had "regular counseling as a young child," and who lacked criminal history, had his first encounter with law enforcement by engaging in such dangerous behavior. *See* Defendant's Sentencing Memo, ECF No. 29. The instant case is far from a single mistake or lapse in judgment. In actuality Lopez-Villanueva planned, coordinated, and conducted three separate firearm transactions over the course of two months, including both privately made firearms and machineguns.

A non-custodial sentence, as Lopez-Villanueva requests, would have no specific or general deterrent effect. Anything less than a custodial sentence would undermine the integrity of the justice system and send the wrong message to the both the Lopez-Villanueva and the community. It may even incentivize others to engage in similar conduct without any fear of repercussion. Based on Lopez-Villanueva's criminal history and the seriousness of the offenses, the government submits that a 37-month sentence is sufficient but not greater than necessary to promote respect for the law and provide just punishment.

### B. Supervised Release

In terms of supervised release, the government concurs with the recommendation of the PSR, that Lopez-Villanueva be subjected to a three-year term of supervised release. In addition to keeping the community safe, supervised release helps to address the concerns noted in the PSR. The government submits that any likelihood that Lopez-Villanueva has to re-offend will

4

be significantly reduced if he remains accountable under supervision. The government further submits that all of the recommended conditions are reasonably related to the goal of deterrence, protection of the public, rehabilitation of the defendant, and involve no greater deprivation of liberty than is reasonably necessary for purposes of supervised release.

Supervised release is an important part of sentencing. Imposing such conditions, or setting parameters of supervision, allows the probation officer to work with Lopez-Villanueva and facilitate reintegration to the community. To his credit, Lopez-Villanueva has been on pre-trial supervision since his detention hearing on February 16, 2024. It appears he has maintained compliance with the conditions of his pre-trial supervision. Undoubtedly, supervised release will equally assist Lopez-Villanueva in avoiding criminal activity and be a "law-abiding and productive member of society." *See* PSR ¶ 123. As a "young offender" supervised release will help ensure rehabilitation for Lopez-Villanueva in addition to maintaining public protection. Given the significant offenses to which Lopez-Villanueva plead guilty, three years of supervised release is appropriate.

## IV.    Conclusion

The government respectfully requests that this Honorable Court impose a sentence of 37 months imprisonment, followed by a three-year term of supervised release.

DATED:  May 1, 2025

Respectfully submitted,

SIGAL CHATTAH
United States Attorney

*/s/  Lauren Ibanez*

_____

Lauren Ibanez
Assistant United States Attorney